Porter, J.
delivered the opinion of the court. This action was commenced by attachment on the 20th day of March last, and on the 28th of the same month, an attorney was appointed to represent the absent debtor.
Sixty days were allowed to put in an answer, and, before the delay expired, it was filed. On the 4th of June, an agent of defendants made affidavit, that by a commission directed to Pittsburgh, Pennsylvania, and places within the state of Ohio, he expected and had every reason to believe, he could prove the several matters *476 of defence, on which the defendants relied.
The district judge refused the commission, on the ground that the proof of such facts, as alleged in the answer, formed no defence to the claim of the petitioner; and the execution of the note being admitted by the pleadings, he gave judgment against the defendants—from which decision they have appealed.
Another ground has been relied on in argument—namely: that the affidavit is not sufficiently positive, and does not disclose the names of the witnesses by whom the facts were expected to be proved. We shall first dispose of this objection.
It has been admitted, that there is not any rule in the district court on this subject. We must, therefore, resort to the general principles of law, that govern cases of this kind:—As an application for a commission, to take testimony in another state, must almost necessarily compel a postponement of the trial, we think the affidavit, on which it is demanded, should be as specific as that which is required to grant a continuance; otherwise, a party *477 seeking delay, could obtain indirectly what he could not succeed in directly. Were this then an ordinary case, where one of the parties had sworn to the necessity of obtaining testimony abroad, we should be inclined to think the oath defective, in not positively stating that such testimony existed, and the names of the witnesses who were to establish it; as a commission to seek for testimony (unless in cases particularly circumstanced) is never granted. The question then is, was this a case so circumstanced? We think so, and that it offers strong reasons for taking it out of the general rule. It has been commenced by attachment—the defendants are citizens of another state, and their defence must be conducted through agents, whose knowlege cannot be exact and positive on matters disclosed to them by their principal. To require, therefore, an affidavit, as if made by the party living within our jurisdiction, might amount to a denial of justice. The plaintiffs, who are citizens of Pennsylvania, cannot complain of this course; if they have selected a tribunal remote from the place where the original contract was entered into, they must take the consequence of waiting until that tribunal can bring the testimony from a distance. *478 They must bear with those delays that have been the result of their own choice, and created by their own act.
The point on which the district court refused the application, brings the whole case under consideration, in as full a manner as if it was presented on a general demurrer to the answer.
The suit is instituted on a promissory note, made in Lexington, Kentucky; and as the contract was entered into in a country governed by the common law, it has been conceded that it must be construed in relation to that system of jurisprudence.
The defence set up is an entire failure of consideration; that the note was given for a steam engine, which the plaintiffs had contracted to furnish of a quality equal to any on the river, but which was defective in every respect; that great exertions had been used to make it answer the purpose for which defendants bought it, and that after many trials made, and considerable expense incurred, it was found wholly inadequate and useless, and had been laid aside as of no value.
To this defence the plaintiffs object—that according to the common law, it is not the partial failure, but entire want of considera *479 tion, which can be pleaded against an obligation, given as security of a contract; that if the article sold is of any value, the buyer is obliged to resort to his action of warranty, and cannot obtain relief by a deduction, in the suit where the purchase money is demanded.
Several authorities have been cited in support of this position, which have been looked into. On examining them, and other cases, it is easy to see that the rule is neither clearly, nor satisfactorily established, in the country where they were decided; and that they turn on distinctions that are not very obvious, nor yet very just. According to these decisions, if you buy property with warranty, which is afterwards discovered to be defective, you cannot plead a breach of the warranty as a defence, but are forced to bring a separate action against the vendor.—1 Selwyn's Nisi Prius, 689. 3 Espinasse's Nisi Prius Cases, 83. 4 ibid, 95.—If, however, the seller knew the defect to which the thing was subject, you can avail yourself of his bad faith in the suit where the price is demanded—2 Taunton's Rep. 3.—Now, why a breach of positive contract, should not form as a strong defence, as a breach of faith, is hard to perceive. Again, according to the *480 cases decided, if goods are bought at a certain price, which turn out to be of little or no value, and the purchaser is sued on the special contract, he must pay the whole sum agreed on, and is left to seek his redress against the person from whom he bought; though, perchance, he may have become bankrupt the day after he has recovered judgment. But, if sued on a quantum meruit, he may show that the objects purchased, were not worth near so much as the amount claimed—7 East, 479. 1 Campbell, 180.—Thus the rights of the defendant are made to depend, in a great measure, on the form of action which the plaintiff selects. These decisions present a strange anomaly on another point. If the purchaser of property pays part of the price, as in the case before us, and is afterwards sued for the balance, he can defend himself by showing there is nothing due, and that what he has paid is an equivalent for what he received; but if he has made no payment before suit is brought, he must pay the stipulated price, and take his remedy against the vendor.—7 East, 491, in note. 1 Selwyn's Nisi Prius, 691. In some of our sister states we find the rule established, with such limitations, as would let in the defence *481 offered here.—13 Johnson, 302. 15 ibid. 230. 14 Massachusetts, 282. In Pennsylvania, where it is probable the contract for the engine was entered into, a failure of consideration may (under an act of assembly of that state) be pleaded to an action of this kind.—1 Sergeant and Rawle, 477. In Kentucky, where the note was executed, such defence appears admissible.—Delany vs. Vaughan, 3 Bibb. 379.
But this investigation is rather a matter of curiosity in the present case, than necessary to settle the rights of the parties; for it appears to the court, that even admitting the plaintiffs to have established the rule of law, for which they contend, a more material question would still remain open for inquiry; namely, whether they could avail themselves of it before our tribunals. It is a general principle, that contracts, made in a foreign country, are governed by the laws of that country in every thing which relates to expounding them; but that the manner in which they are enforced, the form of procedure, the mode of trial, and the nature of relief, must be in pursuance to the regulations existing in the jurisdiction where the debtor is sued.—Morris vs. Eves, 11 Martin, 751. Now, it has been most clearly *482 shown, that in countries governed by the common law, a purchaser of property for a valuable consideration, which is found to be of no value, is not without relief; that he is compensated to the whole extent of the injury sustained. This right, then, attaches to the contract and follows it wherever the parties are found. But the plaintiffs contend that, according to common law, the buyer cannot use it by way of defence, in an action for the purchase-money, but must resort to a separate suit. Conceding this position, it does not follow that we are obliged to do justice in the same manner. The mode of trial, and the relief extended, must pursue our regulations. If it became necessary in the investigation of the rights of suitors in our courts, to obtain the plaintiffs’ answer to interrogatories, we could direct it at once in the ordinary action, though where the parties contracted recourse must be had to a court of equity by a bill praying for discovery. So if it were requisite to decree a specific performance, or put the plaintiff on conditions, it might be ordered in a suit at the instance of the defendant, although in the place where the engagement was entered into, chancery alone could *483 give relief—Mitchell vs. Jewel, 10 Martin, 662—Lafarge vs. Morgan, Dorsey & Co., 11 ibid. 530—Dufour vs. Delacroix, 11 ibid. 718.
It only remains, therefore, to consider if the defence pleaded can be received according to the practice established for the administration of justice in our courts. On this point there is no difficulty. Our law, which is fortunately not much embarrassed by rules merely technical, does not permit a plaintiff to recover money which the defendant can the next day turn round and claim from him; it permits matters which diminish a demand, as well as those which destroy it, to be pleaded in defence—Curia Phillipica, Peremptorias, p. 1, § 15, n. 9; Partida. 3, 10, 5; Febrero, p. 2, lib. 3, cap. 1, § 6, nos. 224—226; Le Blanc vs. Sanglair, ante, 402; Moore's assignee vs. King & al. ibid. 261.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed; and that this case be remanded, with directions to the district judge to permit the defendants to prove a failure of consideration of the note on which suit is brought: and it is further or *484 dered, adjudged and decreed, that the appellees pay the costs of this appeal.
Livermore for the plaintiffs, Maybin for the defendants.